IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SHARON THOMPSON CLEVENGER, et al., | ) CASE NO: 1:20-cv-02677 |
| Plaintiffs, | ) JUDGE PATRICIA A. GAUGHAN |
| v. | ) |
| SMCS SERVICES, INC. d/b/a STAR MULTI CARE CO., et al., | ) |
| Defendants. | ) |

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION AND COURT-AUTHORIZED NOTICE**

Defendants SMCS Services, Inc., Amserv Healthcare of Ohio, Inc., Star Multi Care Holding Corporation, and Stephen Sternbach ("Defendants")[1], by and through undersigned counsel, oppose Plaintiffs' Sharon Thompson Clevenger and Michelle Jurenec's ("Plaintiffs") *Motion for Conditional Certification and Court-Authorized Notice* (the "Motion").  (ECF # 20). Plaintiffs' Motion fails to present a factual basis in support of their individual allegations and claims to warrant collective action.  Plaintiffs present evidence purely personal to them as individuals, without evidence of a common and generally applicable rule, policy or practice, thereby rendering their request to conditionally certify a putative class of plaintiffs and to send

---

[1] Plaintiffs assert that Defendants, for purposes of the Fair Labor Standards Act of 1938, 29 U.S.C. 201, *et seq*., are joint employers.  (ECF # 21, PageID # 119, ¶¶ 13-32.  Although Defendants will not raise applicable joint employer defenses in this memorandum, Defendants deny allegations of joint employer status and reserve the right to challenge the Plaintiffs' joint employer allegation in subsequent motions and proceedings before the court.  For purposes of this Response, Amserv Healthcare of Ohio, Inc. is discussed with regards to the employment terms, as that company is the sole employer.

{03738644 - 1}

notice of this lawsuit to the same improper. As discussed in greater detail below, Plaintiffs' Motion should be denied, and Plaintiffs must pursue this case individually.

## I. RELEVANT BACKGROUND

Defendant Amserv Healthcare of Ohio, Inc. ("Defendant Amserv") operates as a home health care service for clients throughout Ohio under the trade name of Central Star Home Health Services. (*See* Declaration of Elaina Bowser, at ¶ 1[2]). Located in Ontario, Ohio, Defendant Amserv provides in-home services for its clientele, including advocacy services, Alzheimer's and dementia care, end-of-life care, skilled care and rehabilitation (the "Home Health Services"). Accordingly, while Amserv operates out of an Ontario, Ohio location, its employees work primarily away from the office and inside clients' homes. (*Id.*, at ¶ 2).

### A. **Amserv's Home Health Services Employees.**

Home Health Services are primarily performed by two groups of employees: (1) Aides (consisting of Home Health Aides ("HHAs") and State Tested Nurse's Aides ("STNAs") and (2) Licensed Practical Nurses ("LPNs"). (*Id.*, at ¶ 3). Aides perform basic but essential health tasks for Amserv clientele. (*Id.*, at ¶ 4). These include, *inter alia*, assisting with hygiene needs, changing clothing, skin care, transfer to and from a bed or wheelchair, light housekeeping, drafting grocery lists, shopping for groceries or medical supplies, assisting with laundry and preparing/serving meals. (*Id.*). Aides also perform some functions tangential to medical care, such as assisting patients with self-administering medication and reading and recording temperature, pulse and respiration. (*Id.*).

Amserv's LPN employees possess an Ohio nursing license and, therefore, perform essential health services described above as well as certain medical services, such as general

---

[2] The Declaration of Elaina Bowser is attached as Exhibit A.

{03738644 - 1}  2

nursing care, implementation of a nursing care plan, and administration of medication pursuant to a physician's orders. (*Id*., at ¶ 5).

Amserv has classified both Aides and LPNs as non-exempt from the overtime and minimum wage requirements of the Fair Labor Standard Acts of 1938, 29 U.S.C. § 201, *et seq*. ("FLSA"). (*Id*., at ¶ 6). Both Aides and LPNs self-record their hours worked on time sheets, and are paid according to the number of hours reported, including overtime, when applicable. (*Id*.).

### B. Staffing and Shift Reporting.

Although Amserv offers its Home Health Services up to 24 hours a day and 7 days a week, the vast majority of its clients do not require around-the-clock care, or even care for a majority of the day. Depending on the need of the individual, coupled with insurance coverage or other payment methods, the type and length of the services vary, usually between two and eight hours in any one day by one Aide or LPN ("Single Shift Visits"). (*Id*., at ¶ 7). Accordingly, at Single Shift Visits, there is no employee shift change, as only one employee is servicing the client for the day. (*Id*.).

Less commonly, more than one Aide or LPN may service a client in a given day on different shifts ("Multi-Shift Visits"). (*Id*., at ¶ 8). Sometimes (usually due to insurance requirements), a client requiring eight hours of care may be serviced by two employees (Aides or LPNs), each with a four hour shift. (*Id*.). Or, in very rare circumstances, a client may require 24 hour care whereby three separate employees will each take an eight hour shift in a 24 hour period.[3] (*Id*., at ¶ 10). Shift Reporting is a practice reserved only for Multi-Shift Visits. (*Id*., at ¶ 11). This is because only Multi-Shift Visits include a shift change between two Amserv employees. (*Id*., at ¶¶ 9, 11).

---

[3] Twenty-four (24) hour shifts are not a common occurrence. For example, Amserv has only provided 24/7 Multi-Shift Visits to two clients out of its Ontario, Ohio office since January 1, 2018. (Bowser Decl., at ¶ 10).

Shift Reporting is a brief interaction between the outgoing and incoming Aide or LPN at shift change. (*Id*., at ¶ 9). The substance of the Shift Report is minimal and requires only a moment to update the incoming staff member of the day's events, such as when the client took medication, used the restroom facilities, slept or any other unique or peculiar occurrences. (*Id*.). Shift Reporting is short, as this same information is recorded during the employee's shift on a "Progress Note." (*Id*.). A carbon copy of the Progress Note is left at the client's home and is used as a reference for the Aide or LPN on a subsequent shift. (*Id*.).

Shift Reporting is not a common occurrence amongst all of Amserv's LPN or Aide employees, as only a small minority of Amserv's Aides or LPNs work (or worked) Multi-Shift Visits. (*Id*., at ¶ 11). In fact, of all Aides and LPNs employed by Defendant since January 1, 2018, only about 17% have engaged in any Shift Reporting. (*Id*.).

### C. **Plaintiffs File Suit and Seek A Broadly-Defined Conditional Class of Putative Plaintiffs.**

Plaintiffs are both LPNs currently employed by Amserv. (*Id*., at ¶ 12). During their employment, both Plaintiffs serviced Amserv's clients in a variety of ways, including Multi-Shift Visits. (*Id*.).

On December 1, 2020, Plaintiffs filed this lawsuit in the United States District Court for the Northern District of Ohio asserting, *inter alia*, a violation of the FLSA's overtime provisions. (ECF # 1). Plaintiffs amended their Complaint twice, most recently by filing their Second Amended Complaint on March 24, 2021. (ECF # 21).

Plaintiffs moved this Court for conditional certification and court authorized notice on March 19, 2021 in which Plaintiffs requested this Court to certify as a conditional class:

> All present and former full-time hourly homecare providers, including but not limited to, LPNs and aides, employed by Defendants in Ohio from December 1, 2017 to the present.

{03738644 - 1}   4

(ECF # 20, Page ID # 101).[4]

## II. CONDITIONAL CERTIFICATION IS NOT APPROPRIATE IN THIS CASE.

Although the FLSA provides for collective actions through an "opt-in" procedure, see 28 U.S.C. § 216(b), a collective action should proceed only where it facilitates a court's ability to resolve multiple claims efficiently in one proceeding. *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989). Accordingly, Section 216(b) provides that only "similarly situated" employees may utilize the opt-in procedure. *Id.*

The Sixth Circuit Court of Appeals has not yet adopted a definitive standard as a means of evaluating conditional class certification. But "[c]ourts are in general agreement that the certification of a collective action under the FLSA should proceed in two stages." *Smith v. Lowe's Home Ctrs.*, 236 F.R.D. 354, 357 (S.D. Ohio 2005). At the first or "notice" stage – which is the stage at issue here – the Plaintiffs' burden is "fairly lenient," and requires a "modest factual showing" that they are similarly situated to the other employees sought to be notified. *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546-47 (6th Cir. 2006); *Waggoner v. U.S. Bancorp*, 110 F.Supp.3d 759, 764 (N.D. Ohio 2015). The "Court may not merely 'rubber-stamp" any proposed collective action, even at the conditional certification stage." *Steffen v. Sweepers,* No. 2:17-cv-579, 2018 WL 1755332, *4 (S.D. Ohio April 12, 2018). "[C]onditional certification should not be granted unless the plaintiff[s] present[] some evidence to support [their] allegations that others are similarly situated." *Harrison v. McDonald's Corp.*, 411 F.Supp.2d 862, 865 (S.D. Ohio 2005),

---

[4] At the time Plaintiffs filed their Motion, the conditional class was defined differently in the Motion and the then-applicable First Amended Complaint. (ECF # 12 at PageID # 71). On March 24, 2021 – subsequent to the filing of their Motion – Plaintiffs filed their Second Amended Complaint with an amended definition of the conditional class. (ECF # 21 at PageID # 124). The definition and scope of the FLSA conditional class as stated in the Motion now conforms to Plaintiffs' allegations in the Second Amended Complaint pleading.

{03738644 - 1}  5

citing *Olivio v. GMAC Mortgage Corp.*, 374 F.Supp.2d 545, 548 (E.D. Mich. 2004). To do so, Plaintiffs must submit evidence establishing at least a "colorable basis" for their claim that a class of "similarly situated" plaintiffs exists. *Id.* at 868; see also *Osmon v. Grube, Inc.*, No. 16-cv-802, 2017 WL 2908864, *5 (N.D. Ohio July 7, 2017). Plaintiffs make no such showing here.

### A. There is No Common FLSA-Violating Policy or Plan Applicable to All of the Putative Class Members of the Broadly Defined Conditional Class.

The Plaintiffs "bear the burden of demonstrating that the proposed class members are similarly situated to the lead plaintiff[s]."*Arends v. Family Solutions of Ohio, Inc.*, No. 1:18cv2017 2019 WL 4417674, *5 (N.D. Ohio Sept. 16, 2019), citing *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009), *Myers v. Marietta Memorial Hospital,* 201 F.Supp.3d 884, 890 (S.D. Ohio 2016). Courts will find named plaintiffs to be similarly situated to a putative class "when they suffer from a single FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to **all plaintiffs**." *O'Brien*, 575 F.3d at 585 (emphasis added).

Plaintiffs' Motion claims Defendants maintain a uniform policy requiring employees who conduct Shift Reporting to come early and/or stay late and to not report the additional time on their timesheets in order to avoid accruing compensable time, resulting in unpaid overtime in violation of the FLSA. Defendants dispute these allegations as they are patently false. But Defendants understand that at this conditional certification stage this Court "does not generally consider the merits of the claims, resolve factual disputes, or evaluate credibility." *Waggoner*, 110 F. Supp.3d at 765; see also *Myers*, 201 F.Supp.3d at 898. Accordingly, for purposes of this opposition to Plaintiffs' Motion only, Defendants assume the allegations are true.[5] Even with this assumption,

---

[5] Defendants, however, do not concede the accuracy of the allegations and, in fact, dispute their veracity and reserve their right to defend against the baseless accusations in subsequent appearances and filings before this Court.

{03738644 - 1}    6

however, Plaintiffs' dissimilarities to the broadly defined putative class are apparent from the face of their own filings and the record before the Court.

Defendants' compensation practices concerning the Shift Reporting is the foundation of Plaintiffs' Motion. Both Plaintiffs declare they were not compensated for the Shift Reporting time spent outside their scheduled shifts, nor were "others like [them]" pursuant to a uniform policy. (ECF # 21-1, at ¶ 7). Based on these allegations Plaintiffs, both LPNs, seek a broad class of "[a]ll present and former full-time hourly homecare providers, including but not limited to, LPN and aides, employed by Defendants in Ohio from December 1, 2017 to the present." (ECF # 20, at 1).

Plaintiffs, therefore, do not seek to conform the putative class to only those employees who suffer from the same alleged FLSA-violating policy concerning Shift Reporting. Rather, Plaintiffs seek a much broader conditional class united only by job titles or work duties similar to LPNs. But the mere fact that Plaintiffs and the putative class members share the same job title or even some job responsibilities is not sufficient to establish that they are similarly situated for purposes of conditional certification. See, *e.g.*, *Davis v. Mastyn Law Firm P.C.*, No. 4:11-cv-02874, 2012 WL 163941, *6 (S.D. Texas Jan. 19, 2012) (holding that "employees with the same job title are not 'similarly situated' for the purpose of an 'opt-in' FLSA class if their day-to-day job duties vary substantially.") (internal citation omitted). This remains the case even assuming Defendants' maintain a common policy to not pay Aides and LPNs for time spent Shift Reporting, as mere existence of a common policy alone is not enough for conditional certification. See *Rivet v. Office*, 207 F.Supp.3d 417, 424 (D.N.J. 2016) (acknowledging that "the mere existence of uniform policies and procedure is not dispositive" and the Court must examine "the actual work performed by [the employees] on a daily basis."). Plaintiffs must still produce some evidence that the unlawful common policy is actually applied to all members of the putative plaintiffs in order to

certify the class. *Duncan-Watts v. Nestle USA, Inc.*, 1:19 –CV 01437, 2020 WL 589041, *4 (N.D. Ohio Feb. 2, 2020) (denying conditional certification for a broad class of "all present and former hourly employees" when the named plaintiff's alleged unifying policy was unique to her daily job duties that were not shared amongst the entire requested class). Plaintiffs have not – and cannot – do so here.

As discussed above, the practice of Shift Reporting is not a common occurrence throughout the entire putative class. Indeed, Plaintiffs do not allege otherwise in their Second Amended Complaint (ECF # 21), Motion (ECF # 20), or the attached declarations. (ECF # 20-1). Shift Reporting is limited to only Multi-Visit Shifts.[6] And, of all of Defendants' business, Multi-Shift Visits are the exception, not the rule. (Bowser Decl., at ¶ 11). As a result, of all LPNs and Aides who fall within Plaintiffs' proposed conditional class, only approximately 17% could be subject to the alleged common FLSA-violating Shift Reporting policy that purports to unite them. (*Id.*). Allowing Plaintiffs to proceed with the requested class, therefore, would result in a majority subclass of Aides and LPNs unaffected by the alleged common Shift Reporting policy and who cannot avail themselves of Plaintiffs' theory of relief due to a unique question of fact. This necessarily renders conditional certification of the requested class improper. *Triggs v. Lowe's Home Centers, Inc.*, No. 1:13 –CV 1897, 2014 WL 4162203, *6 (N.D. Ohio Aug. 19, 2014) ("even if there were substantial proof of defendant's policies common to the class, the ultimate question – whether those policies resulted in the under compensation of overtime to the putative class members – requires individual inquiries …[i]ndividual issues predominate in this case, and for this

---

[6] Indeed, Plaintiffs' declarations make clear that this alleged unpaid time occurs only when there is a shift relief. (ECF # 20-1, PageID # 110, ¶ 3; PageID # 113, ¶ 3 ("I, and others like me, are required by Defendants to perform shift-change before and after every shift in which there is shift relief.").

{03738644 - 1}　　　　　　　　　　　　　　　　　8

reason, plaintiff's motion for certification is denied"). For this reason alone, conditional certification should not be granted and this Court must deny Plaintiffs' Motion.

B. **Plaintiffs Fail to Submit Sufficient Proof of a Single FLSA Violating Policy as to the Putative Plaintiffs Who Engage in Shift Reporting.**

Although this Court is authorized to narrow the scope of the putative class to include only those LPNs and Aides who worked Multi-Visit Shifts and engaged in Shift Reporting[7], the Court need not – and indeed should not – do so here, as Plaintiffs have submitted insufficient proof they are representative of even a narrower class. *Duncan-Watts*, 2020 WL 589041, *4 ("even if the Court were inclined to narrow the class, the declarations presented by plaintiff are insufficient to allow this course of conduct.").

To prevail at this conditional certification stage, Plaintiffs must not only show "they suffer from a single, FLSA-violating policy" but must also submit sufficient "proof of that policy or of conduct in conformity with that policy proves a violation as to all plaintiffs." *Myers*, 201 F.Supp.3d at 890, citing *O'Brien*, 575 F.3d at 585. In terms of proof, courts are to consider "whether potential plaintiffs were identified; whether affidavits of potential plaintiffs were submitted; and whether evidence of a widespread plan was submitted." *Marek v. Toledo Tool & Die Co.*, No. 3:16cv03005, 2017 WL 5891765, *3 (N.D. Ohio Nov. 29, 2017), citing *Myers*, 201 F.Supp.3d at 890.

Plaintiffs provide none of this proof. Plaintiffs articulate an alleged common plan or policy, but explicitly fail to identify the subset of employees subjected to it. Instead, applying a broad stroke, Plaintiffs define an overbroad class of any and all LPNs or Aides who worked for Defendant Amserv in Ohio over the past three years – regardless of whether the employee is

---

[7] See, *e.g.*, *Bauer v. Transtar Industries*, Case No. 1:15 CV 2602, 2016 WL 1408830, *3-4 (N.D. Ohio 2016); *Arends v. Family Solutions of Ohio, Inc.*, No. 1:18-cv-02017, 2019 WL 4417674, at * (N.D. Ohio Sept. 16, 2019).

{03738644 - 1} 9

entitled to relief under Plaintiffs' Shift Reporting theory. Further, the Motion contains two declarations from only Plaintiffs – the named plaintiffs in this action. There are no further affidavits or declarations of support from any members of the putative class. Furthermore, Plaintiffs' declarations are inadequate to carry their ultimate burden of proof of the existence of a widespread FLSA-violating plan affecting any members of the conditional class.

Plaintiffs' declarations claim[8] Defendants, through the Ohio Administrator, Deb Moiser, verbally articulated a policy in a meeting that would require Plaintiffs to engage in lengthy Shift Reporting without compensation resulting in lost overtime.[9] But Plaintiffs fail to provide any specific circumstances surrounding Ms. Moiser's alleged comment – such as when the alleged

---

[8] Specifically, Plaintiff Clevenger declares:

> 5. In order for good report to take place, I and others like me have to arrive to work 10 to 15 minutes early and/or stay 10 to 15 minutes late to adequately perform the shift change. In fact, my employer's Administrator, Deb Moiser, held a meeting explaining the importance of good report and she told us that we needed to be there 10 to 15 minutes early to relieve the girls going off so they can get a report of what's going on. Deb Moiser is the Administrator for Ohio, which is headquartered in Ontario, Ohio, and her authority extends over all of Defendants' home care providers in Ohio.
>
> 6. We were paid only from our shift start and shift end time, and not paid for the time spent receiving or giving report.

(ECF # 20-1, PageID #111, ¶¶ 5-6)

And Plaintiff Jurenec declares:

> 5. In order for good report to take place, I and others like me have to arrive to work 10 to 15 minutes early and/or stay 10 to 15 minutes late to adequacy perform the shift change. In fact, the Ohio Administrator, Deb, held a meeting explaining the importance of good report. She instructed us to arrive 10 to 15 minutes early and stay late, if necessary, so that good report could take place. As the Administrator, Deb's authority extends over all of Defendants; Ohio home care providers. At the meeting, I specifically asked whether the additional work time should be put onto the time sheets, and Deb told me that only the shift start and shift end times were to be written on the time sheets.
>
> 6. We were only paid from our shift start and shift end times, and not paid for the time spent receiving or giving report.

(ECF # 20-1, PageID # 114, ¶¶ 5-6)

[9] Notably, in asserting the policy or plan was made verbally, Plaintiffs implicitly concede no such written policy exists and, indeed, no such written policy exists. (Boswer Decl., at ¶ 13).

{03738644 - 1} 10

meeting occurred or *whether any other employee was in the meeting and likewise informed of the alleged policy*.

Nevertheless, Plaintiffs declare Ms. Moiser's verbal statement constitutes an unlawful widespread plan requiring "others like [them]" to accrue overtime for which they were not paid:

> 8. I and others like me worked 40 or more hours during workweeks since December 1, 2017.
>
> 9. As outlined above, Defendants knew, or should have known, that we were not getting paid for receiving or giving report […].
>
> 10. I know the experiences of others are similar to mine. My statements here are based upon my own experiences, upon observations of others, training with others, completing report with others, and from talking with others during the course of my employment.

(ECF # 20-1, PageID #111-112, ¶¶ 8-10; PageID # 114-115, ¶¶ 8-10).[10]

Although individual plaintiffs – such as Plaintiffs here – "can speak to an employer's company-wide policy if [they] ha[ve] personal knowledge of other employee's circumstances" they must articulate a "'factual basis' for [this] personal knowledge, one 'from which the court can conclude the Plaintiff and other employees were similarly situated and suffer from a common policy that violated the FLSA.'" *Marek*, 2017 WL 5891765, *4, citing *Munoz v. Big Valley, Inc.*, 915 F.Supp.2d 46, 50 n.5 (D.D.C. 2013) (internal quotations omitted). Plaintiffs fail to articulate any such facts here.

Plaintiffs' Motion argues that two declarations can be sufficient to support conditional certification, and although correct, Plaintiffs overlook that merely submitting declarations alone is not enough. *Flexter v. Action Temp. Servs., Inc.*, No. 2:15-CV-754, 2016 WL 7852351, at *4 (S.D. Ohio Mar. 25, 2016) ("The mere fact that…statements were made in a declaration does not make

---

[10] Defendants note that paragraphs 8 through 10 Plaintiff Clevenger and Plaintiff Jurenec's declarations are identical.

them non-speculative."); see also *Rutledge v. Vlaypool Elec., Inc.*, No. 2-12-159, 2012 WL 6593936, at *6 (S.D. Ohio Dec. 17, 2012) ("speculative statement offered in connection with a Section 216(b) motion may not form the basis of conditional certification.") (collecting cases).

The declarations still must contain facts demonstrating actual or constructive knowledge that allegedly similarly situated employees worked overtime for which they were not paid. *Combs v. The Twins Group, Inc.*, Case No. 3:16-cv-295, 2016 WL 7230854, at *3 (S.D. Ohio Dec. 14, 2016) ("[plaintiff] has failed to present sufficient evidence to support a finding that he and the other crew members are similarly situated, even under a more lenient evidentiary standard. [Plaintiff's] declaration does not contain facts showing that he has actual or even constructive knowledge that his fellow crew members at Taco Bell worked overtime hours for which they were not paid.") Although Plaintiffs claim to have observed, trained with, engaged in Shift Reporting with, and talked to other employees, Plaintiffs do not provide the factual foundation of how these interactions provided them with the personal knowledge that other employees were not paid owed overtime for Shift Reporting, particularly where there is no allegation that any other persons heard the alleged statement made by Deb Moiser. And, practically speaking, their request to conditionally certify a class of which approximately 83% of the putative plaintiffs are unaffected by the alleged FLSA violating Shift Reporting policy strongly suggests they do, in fact, lack personal knowledge of who was or was not paid overtime compensation. See, Section II.A., p. 8, *supra*.

Absent these necessary factual details, Plaintiffs' declarations are nothing more than conclusory allegations. *McKinstry v. Dev. Essential Servs., Inc.*, No. 2:16-cv-12565, 2017 WL 815666, at *2 (E.D. Mich. March 2, 2017) ("although [the conditional certification] standard is lenient, conclusory allegations are insufficient to support conditional certification"). Conditional certification of any class based upon Plaintiffs' unsupported claims are, therefore, improper and the

Motion should be denied. See *Arrington v. Michigan Telephone Co.*, No. 10-10975, 2011 WL 3319691, at *6 (E.D. Mich. Aug. 1, 2011) (denying conditional certification motion because "the plaintiffs have provided no evidence of common treatment beyond two experiences of [the two named plaintiffs] and their [unsupported] beliefs that other [employees] are not being compensated for their work.").[11]

### III. PLAINTIFFS ARE NOT ENTITLED TO SEND NOTICE.

Defendants respectfully submit that, based on the foregoing, the issue of notice is moot. Nonetheless, Defendant respectfully requests that, if this Court grants the Motion in whole or in part, it reserve judgment on the question of notice and allow the parties to attempt to stipulate to the content of notice and opt-in procedures and present them to the Court. See, e.g., *Banegas v. Calmar Corp.*, No. 15-593, 2015 WL 4730734, at *6 (E.D. La. Aug. 10, 2015) ("[Notice] issues are best resolved by mutual agreement of the parties.").

If, however, the parties are unable to stipulate to notice and opt-in procedures, Defendants respectfully request the Court require the parties to submit a short memorandum addressing notice and opt-in procedures including, but not limited to: (1) the method and timing of production of information including names and physical addresses, (2) the content of the notice, (3) the means of delivery of the notice; and (4) the length of the opt-in period.[12]

---

[11] Compare to: *Sisson v. OhioHealth Corp.*, No. 2:13-cv-0517, 2013 WL 6049028 (S.D. Ohio 2013) (granting conditional certification where plaintiff stated she observed other employees working while not clocked in); *Castillo v. Morales*, Inc., 302 F.R.D. 480 (S.D. Ohio 2014) (granting conditional certification where plaintiff submitted documentary evidence of improper pay practices in addition to her own declaration); *Snelling v. ATC Healthcare Servs. Inc.*, No. 2:11-CV-00983, 2012 WL 6042839, at *1 (S.D. Ohio Dec. 4, 2012) (granting conditional certification where allegations were supported by plaintiff's observations of other employees and payroll records); *Ford v. Carnegie Mgmt. Servs., Inc.*, No. 2:16-CV-18, 2016 WL 2729700, at *3 (S.D. Ohio May 11, 2016) (plaintiff averred that she personally observed Defendant's managers reduce her time and the time of other non-exempt hourly employees).

[12] Plaintiffs do not submit a proposed notice to the Court. However, Plaintiffs, have indicated to the Court they seek to send notice to "all present and former full-time hourly homecare providers, including but not limited to, LPNs and aides, employed by Defendants in Ohio from December 1, 2017 to the present." (ECF # 20, at 1). This is improper It is well established that "certification should be based on the date of the notice, not the filing of the lawsuit." *Roberts v. J.R. Engineering, Inc.*, Case No. 5:19-CV-00110, 2019 WL 5653340, at *5 (N.D. Ohio, October 31, 2019); see also

## IV.   CONCLUSION

The standard for granting conditional certification is modest and fairly lenient, but "is by no means automatic." *Shipes v. Amurcon Corp.*, No. 10-14943, 2012 WL 995362, at *10 (E.D. Mich. Mar. 23, 2012). Plaintiffs' failure to conform their requested conditional class to only those employees harmed by the alleged FLSA-violative policy and/or failure to articulate a cognizable basis for their belief that all their Ohio LPN and Aide co-workers were not compensated for engaging in Shift Reporting dooms their Motion, and this Court is proper in denying conditional certification for the requested or narrowed conditional class.

Respectfully submitted,

*/s/ Joseph J. Brennan*
Mark S. Fusco (Reg. No. 0040604)
  Email: mfusco@walterhav.com
  Direct Dial: 216-619-7839
Joseph J. Brennan (Reg. No. 0085353)
  Email: jbrennan@walterhav.com
  Direct Dial: 216-928-2899
Rina R. Russo (Reg. No. 0087761)
  Email: rrusso@walterhav.com
  Direct Dial: 216-928-2928
WALTER | HAVERFIELD LLP
1301 E. Ninth Street, Suite 3500
The Tower at Erieview
Cleveland, OH  44114
(216) 781-1212 telephone
(216) 575-0911 facsimile
*Attorneys for Defendants*

---

*Crescenzo v. O-Tex Pumping, LLC*, Case No. 15-CV-2851, 2016 WL 3277226, at *5 (S.D. Ohio June 15, 2016) ("Courts in the Sixth Circuit have found that class certification is appropriately limited to three years prior to the date of approval of the notice, and not the filing of the lawsuit."). Therefore, Plaintiffs' notice must be limited to a three-year period preceding the notice. Notwithstanding the three-year notice period, the statute of limitations continues to run for Putative Class Members until their consent to sue is filed with the court. *Betts v. Central Ohio Gaming Ventures, LLC*, 351 F. Supp. 3d 1072, 1075 (2019) ("For FLSA collective actions, filing the complaint does not toll the statute of limitations. Rather, the statute of limitations continues to run on each individual claim until each opt-in plaintiff files his or her consent to join the action.") (internal citations omitted). Accordingly, former employees of Defendants who receive notice may nonetheless be barred from being part of this action if their respective consent to sue is untimely filed.

{03738644 - 1}                                              14

**CERTIFICATE OF SERVICE**

    A copy of the foregoing *Defendants' Memorandum in Opposition to Plaintiffs' Motion for Conditional Certification and Court-Authorized Notice* has been filed this 2nd day of April, 2021, through the Court's electronic filing system.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's system.

                                                /s/ *Joseph J. Brennan*_____
                                                Joseph J. Brennan