UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **Sharon Thompson Clevenger,** *et al.*, *on behalf of themselves and all other similarly situated individuals*, | CASE NO. 1:20 CV 2677 |
| Plaintiffs, | JUDGE PATRICIA A. GAUGHAN |
| Vs. | |
| SMCS Services, Inc., *et al.*, | **Memorandum of Opinion and Order** |
| Defendants. | |

**INTRODUCTION**

This matter is before the Court upon Plaintiffs' Motion for Conditional Certification and Court-Authorized Notice (Doc. 20). This case arises under the Fair Labor Standards Act ("FLSA"). For the reasons that follow, the motion is GRANTED in PART. The Court certifies a collective action as follows: All present and former full-time hourly homecare providers, including HHAs, STNAs, and LPNs, employed by Defendants, who performed Shift Reporting in Ohio from 3 years preceding the Court's Order to the present. The Court denies plaintiffs' request for notice at this time. The parties must comply with the procedures governing the

1

approval of notice, as set forth herein.

**FACTS**

Plaintiffs, Sharon Thompson Clevenger and Michelle Jurenec, filed this lawsuit against defendants, SMCS Services, Inc., Amserv Healthcare of Ohio, Inc., Star Multi Care Holding Corporation, and Stephen Sternbach, alleging that defendants failed to pay plaintiffs for all hours worked and, thus, defendants violated federal and state overtime laws.

According to the Second Amended Complaint, plaintiffs are employed by defendants. Plaintiffs are licensed practical nurses ("LPNs") who perform home health care work on an hourly basis. Defendants require plaintiffs to perform "shift-care" work before and after every shift. This is called shift reporting. It allows the oncoming shift workers to obtain all necessary information about what occurred during the previous shift and learn what work will need to be performed. In order for proper shift reporting to occur, employees must arrive approximately 10-15 minutes prior to the official start of their shifts, or stay 10-15 minutes after the shift ends. Employees are responsible for submitting their own time sheets to defendants. Plaintiff Jurenec avers that she inquired of defendants' Administrator as to whether time spent on shift reporting should be included in the employees' time sheets. The Administrator told plaintiff Jurenec to report only the hours of the actual shift start and end times. As a result, plaintiffs were not paid for time spent on shift reporting, which resulted in the failure to pay overtime.

The Second Amended Complaint contains three claims for relief. Count one is a claim for violation of FLSA. Count two seeks relief under Ohio's statutory wage laws, and count three alleges a violation of O.R.C. § 2307.60. Plaintiffs move for conditional certification under FLSA. Defendants oppose the motion.

**ANALYSIS**

An employee may sue for violations of the FLSA on his or her own behalf and as a representative plaintiff on behalf of similarly situated employees.  29 U.S.C. § 216(b).  The similarly situated employees must opt-in by "giv [ing] [their] consent in writing to become such ...part[ies] and such consent [must be] filed in the court in which such action is brought." *Id.* This type of suit is called a "collective action."  A district court may, in its discretion, facilitate notice of the collective action to potential opt-in plaintiffs to efficiently adjudicate the FLSA collective action.  *See Hoffman-La Rouche Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

Before deciding whether an action may proceed as a collective action, a court must determine whether the prospective opt-in plaintiffs are similarly situated.  *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546-47 (6th Cir. 2006).  Courts generally use a two-stage approach to determine this issue.  *Id*.  *See also Murton v. Measurecomp*, *LLC*, 2008 WL 5725631, *2 (N.D. Ohio 2008).  In the first stage, which takes place at the beginning of discovery, courts require only a "modest factual showing" that the plaintiff's position is similar to that of other employees. *Comer*, 454 F.3d at 546-47 (quoting *Pritchard v. Dent Wizard Int'l*, 210 F.R.D. 591, 595 (S.D. Ohio 2002)).  This is a "fairly lenient" standard and "typically results in 'conditional certification' of a representative class."  *Id.* at 547 (internal citations omitted).  At the notice stage, a district court does not consider the merits of the plaintiff's claims, resolve factual disputes, make credibility determinations, or decide substantive issues.  *Swigart v. Fifth Third Bank*, 276 F.R.D. 210, 214 (N.D. Ohio 2011).

During the second stage, the court makes a final determination on whether opt-in class members are similarly situated based upon a thorough review of the record after discovery is

completed. *Schwab v. Bernard*, 2012 WL 1067074, *2 (N.D. Ohio 2012). This final certification decision is normally based on a variety of factors, including "factual and employment settings of the individual[] plaintiffs, the different defenses to which the plaintiffs may be subject on an individual basis, [and] the degree of fairness and procedural impact of certifying the action as a collective action." *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009), *abrogated in part on other grounds, Consumer Campbell-Ewald Co. v. Gomez,* 136 S. Ct. 663 (2016) (internal citations omitted).

In their motion, plaintiffs ask that the Court conditionally certify the following class:

All present and former full-time hourly homecare providers, including but not limited to, LPNs and aides, employed by Defendants in Ohio from December 1, 2017 to the present.

In support of their motion, plaintiffs present their own declarations. Both aver that they are LPNs, who were required to perform shift reporting, but were not paid for that time. Plaintiff Jurenec avers that she was informed that the time should not be recorded. Both plaintiffs aver that the they were only paid from their shift start time to their shift end time. As a result, plaintiffs worked more than 40 hours per week, but were not paid overtime.

In response to the motion, defendants argue that the class definition is significantly overbroad and encompasses a large number of employees who did not engage in shift reporting. This is so because the vast majority of shifts are "single" shifts with no overlapping care. Defendants note that only 17% of all of their employees engaged in shift reporting. As such, plaintiffs fail to meet their burden of demonstrating that the opt-in plaintiffs are similarly situated.

In their reply brief, plaintiffs appear to agree that the proposed class definition is overbroad. Plaintiffs ask that the Court certify a narrower class consisting of:

> All present and former full-time hourly homecare providers, including HHAs, STNAs, and LPNs, employed by Defendants, who performed Shift Reporting in Ohio from 3 years preceding the Court's Order to the present.[1]

Defendants acknowledge that the Court may narrow the class definition. But, defendants argue that certification of the narrower class is nonetheless improper because plaintiffs have not presented sufficient proof that they are representative of this narrower class. Although plaintiffs allege a common plan, there is no evidence suggesting which employees were subjected to that plan. Defendants point out that the two declarations provided in support of the motion are from the named plaintiffs. According to defendants, there is no indication that any other employee heard the Administrator inform plaintiff Jurenec not to submit time spent on shift reporting. Nor is there any evidence that other employees were so instructed. In reply, plaintiffs argue that defendants acknowledge that employees were required to perform shift reporting. Plaintiffs note that, although defendants deny that a company policy existed regarding the non-payment of shift reporting, the Court cannot consider issues of liability or credibility at the conditional certification stage.

Upon review, the Court finds that plaintiffs satisfy the fairly lenient burden required for conditional certification. Plaintiffs easily demonstrate that defendants required homecare workers to engage in shift reporting and that the policy applied to all individuals that worked overlapping shifts.[2] Defendants admit as much. (Bowser Decl. at par. 9). Defendants' primary

---

[1] Both plaintiffs also aver that they were not paid for training time. The motion makes no mention of this, and the class definition does not encompass this allegation. Accordingly, the allegations directed at training time are not part of the collective action.

[2] Although plaintiffs are both LPNs, defendants do not dispute that the other categories of employees, *i.e.*, HHAs and STNAs, also

argument is directed at whether plaintiffs satisfy their burden of demonstrating that defendant had a policy of not paying their employees for this time.  Although a close call, the Court finds that the affidavits submitted by plaintiffs are sufficient in this regard.  The crux of defendants' argument is that plaintiffs reported their own time to defendants and there is no evidence, with the exception of a single statement made by the Administrator to plaintiff Jurenec, that defendants had a policy of refusing to pay for shift reporting.  But, both plaintiffs indicate that they "know the experiences of others" are similar to their experiences.  This knowledge is "based upon [their] own experiences, upon observations of others, training with others, completing report with others, and from talking with others during the course of [their] employment." (Jurenec Aff. At pars. 6, 10; Thompson Clevenger Aff. at pars. 6, 10).  They further aver, "we were paid only from our shift start and shift end times, and not paid for the time spent [on shift reporting]."  (Id. at par. 10).  In addition, the Court notes that plaintiffs aver that defendants should have known that plaintiffs were not getting paid for the time spent shift reporting.  (Id. at par. 9).  In other words, defendants paid each class member only for an eight-hour shift, but required them to engage in shift reporting in addition to this eight-hour shift.   Defendants would have known, presumably based on payroll records, that plaintiffs were not paid for shift reporting.[3]  The Court finds that the evidence submitted by plaintiffs is sufficient to show–at the conditional certification stage–that plaintiffs and potential opt-in plaintiffs are similarly situated.

---

engaged in shift reporting.  Any other difference in the underlying job duties does not appear relevant to conditional certification.

[3] The Court notes that defendants present evidence that the time spent on shift reporting occurred as shifts changed and was essentially *de minimis*.  But, the Court does not address issues of liability at the conditional certification stage.

6

The affidavits demonstrate that plaintiffs in the proposed class are unified by a common plan–defendants required employees to perform shift reporting, which occurred outside the hours of their designated shift, but paid employees only for their designated shift. Because the class is limited to employees who worked "full time," the failure to pay for shift reporting would have resulted in overtime violations. The Court notes, however, that it may revisit this issue during the second stage of certification, based upon a thorough review of the record after discovery is completed.

### Notice

Plaintiffs ask that the Court direct the parties to jointly submit a proposed notice to the class, require defendants to provide a roster and contact information for all class members, send notice to the class members within 14 days of receipt of the roster, provide a declaration that the roster complies with the this Order, and allow duplicate copies of the notice to be sent under certain circumstances. In response, defendants request that the Court reserve judgment on the issue of notice and allow the parties to stipulate to the content of the notice and opt-in procedures. Defendants note that plaintiffs do not provide a proposed copy of the notice they seek to have approved. Defendants also argue that the class definition is too broad. According to defendants, certification should be based on the date of the notice, not the filing of the lawsuit. Plaintiffs appear to agree. In their reply brief, instead of seeking to certify a class dating back to three years prior to the filing of the lawsuit, plaintiffs seek to certify a class dating back three years from the date of this Order. This is the class definition approved by the Court. Accordingly, defendants' concerns in this regard appear to be moot.

Upon review, the Court imposes the following notice requirements:

(1) The parties will meet and confer regarding the content of the notice to be sent to opt-in plaintiffs.  Within 14 days of the filing of this Order, the parties will file a joint request for notice ("Request").   Although this case is straightforward, in the event the parties cannot agree on a particular provision of the notice, the parties may note any disagreement in the Request.  The Court will promptly rule on the Request.

(2) The Request must also include a proposed time line for the production of a class list and the timing of the issuance of the notice, as well as any other issue the parties deem relevant to the notice process.

(3) Within 14 days of the filing of this Order, defendants must begin to compile a list of the names and contact information of the opt-in plaintiffs so that defendants are in a position to produce a class list soon after the Court approves the class notice.

IT IS SO ORDERED.

    /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge
Dated: 4/27/21                         Chief Judge